Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50189 | **DATE** | 4/17/2001 |
| **CASE TITLE** | Owens vs. Top Transportation Services, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendants' motions for summary judgment are granted and this cause is hereby dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| X | Notices mailed by judge's staff. | | APR 18 2001 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | |
| X | Mail AO 450 form. | | docketing deputy initials |
| X | Copy to judge/magistrate judge. | | 4-18-01 |
| /SEC | courtroom deputy's initials | 2001 APR 17 PM 4:26 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

**DOCKETED**
**APR 18 2001**

Louis P. Owens

v.

Top Transportation Services, Inc., et al.

**JUDGMENT IN A CIVIL CASE**

Case Number: 99 C 50189

- [ ] Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

- [X] Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendants' motions for summary judgment are granted and this cause is hereby dismissed in its entirety.

FILED-WD
2001 APR 17 PM 4: 26
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 4/17/2001

Susan Wessman, Deputy Clerk



THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

LOUIS P. OWENS,        )
                       )
        Plaintiff,     )    No. 99 C 50189
                       )
    v.                 )
                       )
TOP TRANSPORTATION SERVICES, INC. )
and SUNDSTRAND CORPORATION, )
                       )
        Defendants.    )

## MEMORANDUM OPINION AND ORDER

### Introduction

On June 9, 1999, plaintiff Louis Owens filed a one-count complaint against Top Transportation Services, Inc. ("Top"), and Sundstrand Corporation ("Sundstrand"), alleging defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., when they discharged him in 1997. Currently pending are both defendants' motions for summary judgment, filed pursuant to Fed.R.Civ.P. 56. Jurisdiction is proper under 28 U.S.C. § 1331. Venue is proper as a substantial part of the events giving rise to the claim occurred in this district and division. See id. § 1391(b)(2).

### Facts

Sundstrand's aerospace and aircraft products are transported to various destinations by a contracted carrier service.

1

(LR56.1(a) ¶ 2)[1] Over the years it has used various contracted carrier services, the last one being Top. Pursuant to its agreement with Top, Sundstrand accepted responsibility for making sure Top drivers complied with the U.S. Department of Transportation Motor Carrier Safety regulations ("DOT regulations") and other applicable federal and state laws and regulations. (Id. ¶ 19)

During the relevant time period, Owens (whose date of birth is December 29, 1928) was formally employed by Top as an over-the-road truck driver and for approximately twelve years was assigned exclusively to haul Sundstrand's products. (Compl. ¶¶ 6, 10) From mid-1984 through the end of 1996, Owens received his daily directions from Russ Ziegert, a dispatcher for Sundstrand. Ziegert voluntarily resigned at the end of 1996, and Mel Wilson (whose date of birth is December 25, 1942), a tractor-trailer driver, replaced Ziegert. (LR56.1(a) ¶ 30) Wilson reported to David Westervelt (whose date of birth is July 23, 1946), Sundstrand's manager of telecommunications/network. (Id. ¶ 33)

During the twelve years he was assigned to drive trucks for Sundstrand, Owens was assigned to the "Milwaukee-Auburn run," which included two trips to Auburn, Alabama, and was paid for the number of miles assigned to this route. (Id. ¶¶ 20-21, 34-35)

---

[1] The court will refer to Sundstrand's statement of facts as "LR56.1(a) ¶ ___." Top did not file a statement of facts but incorporated and relied on Sundstrand's facts.

2

At the end of each week, Owens completed a weekly pay sheet that logged the daily miles, which he submitted to Ziegert (and then to Wilson, after Ziegert retired) after completing his weekly route. (Id. ¶ 26)

It is undisputed that during the twelve years he was assigned to this route, Owens falsified his daily driver log by recording less than the number of miles he had actually driven. (Id. ¶ 49) He did this so as to appear to be in compliance with the DOT regulations. Ziegert knew of the falsification and condoned it. In fact, Ziegert had been responsible for mapping out the Milwaukee-Auburn run. It was not possible for a single driver to drive this route, get to the first location by the required time as scheduled by Sundstrand, and comply with the DOT regulations. (LR56.1(b)(3)(B) ¶¶ 10-11)[2] It is also undisputed Owens submitted a Fuel Tax and Mileage Report, in which he accurately recorded the number of miles he had driven. Sundstrand used this report to calculate the amount it owed the company from which Sundstrand leased the trucks.

When Wilson became the dispatcher, he told Westervelt he believed one of the drivers was falsifying his daily log.

---

[2] Sundstrand claims it was possible for a single driver to drive the Milwaukee-Auburn run in compliance with the DOT regulations. (LR56.1(a) ¶ 66) However, nothing in the audit report supports this assertion. (Def. Exh. F) It should be noted that when Wilson assumed Ziegert's job, he assigned two drivers to the Milwaukee-Auburn run.

3

(LR56.1(a) ¶ 60) Westervelt ordered an audit of all the daily logs from November and December of 1996. (Id. ¶ 63) Wilson also recommended that Owens' route be converted to a team assignment, meaning two drivers would be used to complete the run. (Id. ¶ 61) Westervelt approved Wilson's recommendation. The audit results revealed Owens' falsification, and the results were published in a report entitled, "Corporate Transportation Services Audit Report." (Id. ¶ 65; Sundstrand Exh. F) Westervelt received a preliminary copy of this report in February 1997. (LR56.1(a) ¶ 67) The report concluded that Owens was violating DOT regulations. (Id.) On February 20, 1997, Westervelt met with Ernest Reichert, Top's Vice President, to discuss the results of the preliminary audit. (Id. ¶ 68) During the meeting, Westervelt stated Sundstrand would no longer accept Owens' services, and Reichert concurred. (Id. ¶ 69) Owens was thereafter discharged from Top. (Id. ¶¶ 74-75)

## Analysis

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Bekker v. Humana Health Plan, Inc.</u>, 229 F.3d 662, 669 (7th Cir. 2000), <u>petition for cert.</u>

4

filed, ___ U.S.L.W. ___ (U.S. Feb. 12, 2001) (No. 00-1294). A genuine issue of fact exists only when a reasonable jury could find for the nonmoving party based on the record as a whole. <u>Bekker</u>, 229 F.3d at 669. The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000); <u>EEOC v. Sears, Roebuck & Co.</u>, 233 F.3d 432, 436 (7th Cir. 2000). Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, pointing to specific facts showing there is a genuine issue for trial. <u>Oest v. Illinois Dep't of Corr.</u>, 240 F.3d 605, 610 (7th Cir. 2001). A complete failure of proof concerning an essential element of a case necessarily renders all other facts immaterial. <u>Id</u>.

Here, Owens concedes he has no direct evidence of age discrimination. (Resp., p. 1) Thus, the court will analyze his ADEA claim under the *McDonnell Douglas* burden-shifting approach. Accordingly, Owens must first establish a prima facie case of age discrimination by demonstrating: (1) he is over the age of 40; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, non-protected employees were treated more

5

favorably. Reeves, 120 S. Ct. at 2106; Gordon v. United Airlines, Inc., ___ F.3d ___, 2001 WL 322168, at *6 (7th Cir. Mar. 29, 2001). The first and third elements of the *McDonnell Douglas* analysis are not at issue here.

Defendants argue Owens has not established the second and fourth elements of a prima facie case. The issue of whether Owens' job performance was satisfactory focuses on some of the same circumstances as must be scrutinized with respect to the issue of pretext. See Gordon, 2001 WL 322168, at *6. Thus, the court will comprehensively discuss his performance in the context of pretext. As for the fourth element, Sundstrand states the truck driver who replaced Owens was nine years, eleven months younger than Owens. (Memo., p. 9) Because the age difference is less than ten years, Sundstrand argues the replacement was not substantially younger than Owens so as to satisfy the fourth element. See Fisher v. Wayne Dalton Corp., 139 F.3d 1137, 1141 (7th Cir. 1998) ("substantially younger" means at least a 10-year age difference). The court rejects this argument. The *McDonnell Douglas* analysis is not rigid, mechanized, or ritualistic. Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1090 (7th Cir. 2000). The replacement's age is close enough to Owens' that the court considers him to have established the fourth element.

However, Owens falters at the pretext stage. A plaintiff can prove pretext by presenting evidence from which a reasonable

6

factfinder could conclude the employer's proffered reason is unworthy of credence, raising the inference that the real reason is discriminatory. Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1310 (7th Cir. 1997). The question is whether the employer honestly believed its proffered reason for discharge. Id. That the employer may have been mistaken or stupid goes nowhere as evidence that the proffered reason is pretextual. Id.

Defendants state Owens was asked not to drive trucks anymore for Sundstrand because Sundstrand and Top discovered, via an audit, that he had been falsifying his driving logs. Owens believes the purpose of the audit was a pretext to support his termination. (LR56.1(b)(3)(B) ¶ 40) He argues he had been falsifying his logs for twelve years and Ziegert knew about it. The court finds Ziegert's knowledge is irrelevant when analyzing the circumstances surrounding Owens' discharge. In his deposition, Owens stated no one, other than Ziegert, knew about the falsification because Ziegert concealed this information. (LR56.1(a) ¶ 57) Specifically, Owens testified as follows:

> Q: Do you have any facts that Sundstrand Corporation – Sundstrand corporate, as Mel Wilson called it, knew about your falsification of logs before January of '97?
> A: Russ [Ziegert] was very particular in protecting that knowledge – from that knowledge.
> Q: Protecting you from that knowledge?
> A: Protecting Sundstrand from that knowledge that I was running those many miles and so on.
> Q: So what you just said was Russ protected Sundstrand from knowing that you were turning in –
> A: Yes.
> Q: – illegal logs?

7

```
A:    Yes.
Q:    Do you think Sundstrand found out about the illegal
      logs in part because Russ had left?
A:    Yes.
```

(Def. Exh. B, Owens dep., p. 99)

In his affidavit, Owens states he has no direct knowledge as to whether Ziegert concealed the falsification from his superiors. (Pl. Exh. 1, Owens Aff., ¶ 20) This is in direct conflict with his deposition testimony and will be disregarded. See Adusumilli v. City of Chicago, 164 F.3d 353, 360 (7th Cir. 1998), cert. denied, 528 U.S. 988 (1999). Even if the court were to conclude that Owens lacks personal knowledge as to what Ziegert's superiors knew, he has not produced evidence showing they knew of his twelve-year history of falsifying his driving logs.

Moreover, that Ziegert knew is irrelevant because he did not participate in the circumstances surrounding Owens' discharge. Rather, after Ziegert retired, Wilson assumed the dispatcher position. He had been a truck driver before being promoted and had seen Owens on a highway which he believed was not part of Owens' authorized Milwaukee-Auburn run. (LR56.1(a) ¶ 54) Wilson believed Owens was using an unauthorized route so that he could drive faster. At the time he was promoted, Wilson told Westervelt he believed one of the drivers was falsifying his daily log. (Id. ¶ 60) Westervelt then ordered the audit which revealed Owens' falsified daily logs. (Id. ¶ 63)

Owens argues Sundstrand management knew of the falsification because he regularly turned in a Fuel Tax and Trip Mileage Report which showed the actual miles he had driven. However, a company official would have had to compare this report with Owens' daily log to discover the falsification. There is no evidence anyone took such steps prior to the audit.

Owens also argues Ziegert repeatedly told Owens it was time for him to retire. (LR56.1(b)(3)(B) ¶¶ 46-47) As Owens has shown no link between Ziegert and the decisionmakers, his statements are irrelevant. See Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1400 (7th Cir. 1997) (absent evidence that subordinate concealed relevant evidence from decisionmaker or fed him false information, subordinate's prejudiced statement could not provide the basis for a finding of discrimination); Eiland v. Trinity Hosp., 150 F.3d 747, 751 (7th Cir. 1998). Owens argues Wilson overheard Ziegert's comments about retirement and this somehow indirectly influenced Wilson to seek the termination of Owens' assignment to Sundstrand. (LR56.1(b)(3)(B) ¶ 47) This argument is based on sheer speculation. Westervelt made the decision not to use Owens' services after the audit, which Top's Vice President Reichert concurred with, and there is no evidence Wilson contributed in any way to this decision.

Owens has not produced any admissible evidence of younger drivers who falsified their driving logs, about which Sundstrand

9

and/or Top knew, and who were not discharged. Owens claims other drivers have falsified their logs (LR56.1(b)(3)(B) ¶ 52). Yet, he refuses to identify these drivers or offer admissible evidence regarding such falsification and evidence tending to show Westervelt and/or Reichert were aware of it. Moreover, Owens never complained to anyone else at either Sundstrand or Top that Ziegert was forcing him to drive a noncompliant route and cover it up in his driving logs. In short, Owens has failed to produce evidence from which a reasonable factfinder could conclude the audit was used as a pretext to discharge Owens because of his age.[3]

### Conclusion

For the reasons set forth above, defendants' motions for summary judgment are granted and this cause is hereby dismissed in its entirety.

E N T E R :

_____
**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: April 17, 2001

---

[3] It should also be noted that all of the drivers assigned to Sundstrand are within the protected class, and at least one driver, who still drives for Sundstrand, is older than Owens. (LR56.1(a) ¶¶ 93, 97)